EDWIN H. CARROLL

*v.*

WILLIAM DRURY *et al.*

*Opinion filed December 22, 1897—Rehearing denied February 4, 1898.*

1. SPECIFIC PERFORMANCE—*specific performance not decreed to carry out an unreasonable interpretation of contract.* An application for specific performance is addressed to the sound legal discretion of the court, and should not be granted to carry out an unreasonable interpretation of the contract.

2. CONTRACTS—*in construing uncertain contract court may look at surrounding circumstances.* In construing a contract uncertain in mean-

ing the court may look at the surrounding circumstances, in order to understand the language in the sense intended by the parties.

3. SAME—*reasonable construction given contract by conduct of parties will be adopted.* Where the terms of a contract are uncertain, and the parties have by their conduct placed a reasonable construction thereon, such construction will be adopted by the court.

4. SAME—*illustration of rule that court will adopt parties' own construction.* Where a bond for deed providing for payment of the purchase money in three installments contains an uncertain provision concerning allowance of discount, the construction placed upon the contract by the conduct of the parties in making and accepting the first two payments without discount will be adopted by the court, when called upon to construe the uncertain provision.

5. DISCOUNT—*definition of term "discount," as used in commerce and as used among bankers.* The term "discount," as generally used, means an allowance or deduction made for pre-payment or prompt payment of a bill or account. Among bankers the term means a deduction made for interest in advancing money upon a bill or note not due,—the taking of interest in advance.

APPEAL from the Circuit Court of Mercer county; the Hon. HIRAM BIGELOW, Judge, presiding.

BASSETT & BASSETT, for appellant.

J. H. CONNELL, and SCOTT & COOKE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a bill for specific performance, filed on March 6, 1896, by the appellant against the appellees, setting up that a contract for the sale of 220 acres of land was made by the appellees with the appellant; that the appellant has paid the purchase money called for by the contract, and is entitled to a deed of the premises; and the bill prays that the appellees may be ordered to deliver to appellant such deed. The bill was answered by the defendants thereto, admitting the contract of sale, but denying that the complainant has paid all the purchase money called for by the contract, and alleging that the defendants have executed a deed for said land, and tendered the

same to appellant, and offered to deliver it to him, upon his payment of the balance of the purchase money which remains unpaid; and defendants aver in their answer, that they bring said deed into court and tender it to complainant upon his payment of the balance due on the contract as aforesaid. The cause was referred to a master in chancery, who took testimony and made a report in favor of the contention of the appellant, as herein set forth. Exceptions were filed to this report. Upon a hearing of the case before the circuit court, the exceptions were sustained; the report of the master was overruled, and a new reference was ordered to him, directing that he make a report substantially in accordance with the theory of the appellees, as hereinafter set forth. The defendants below, the appellees here, also filed a cross-bill which was answered by the appellant. Upon a hearing of the cause, the court entered a decree confirming the second report of the master, dismissing the cross-bill, and ordering the delivery of the deed filed in court to the appellant upon his payment of a certain sum of money to the appellee William Drury, within ninety days. The present appeal is prosecuted from the decree so entered.

On August 13, 1895, appellant wrote a letter to the appellee, William Drury, proposing to purchase the land upon certain terms therein stated. This letter, though written by appellant, was signed by one Volentine, an agent of appellee, Drury. Appellee accepted the proposition, contained in the letter, on August 14, 1895, with the exception, that the date of the payment of one of the installments of the purchase money was changed. Thereupon, on August 14, 1895, a bond was executed by the appellees, William Drury and Vashti Drury, his wife, embodying the terms of sale as agreed upon. This bond is in the penalty of $8000.00, given to Edwin H. Carroll, bearing date August 14, 1895, with the condition, that William Drury had, on the day of the date thereof, sold to Edwin H. Carroll the said 220 acres in Mercer county

for the sum of $7700.00 "to be paid as follows: $500.00 upon the delivery of this obligation; $4000.00 on or before the first day of January, 1896; and $3200.00 on or before the first day of March, 1897, with seven per cent interest thereon from March 1, 1896. The said William Drury to allow a discount of seven per cent on all payments made prior to March 1, 1896." The bond also contains a provision, that, upon payment of the two first mentioned sums, the obligors agree to convey to Carroll on March 1, 1896, said premises by deed, taking a mortgage thereon to secure the deferred payment, Carroll having the privilege of making such improvements as he may desire; Drury having the use of the pasture until March 1, 1896.

On August 14, 1895, appellant, Carroll, made the cash payment of $500.00 on the bond. On December 30, 1895, appellant paid the $4000.00 which was due by the terms of the bond on January 1, 1896. On February 28, 1896, appellant paid to appellee, Drury, the sum of $2697.00, to apply on the bond. The latter amount was $503.00 less than $3200.00, the amount of the third payment. The sum of $503.00 was seven per cent on the sum total of the three payments made by appellant, to-wit: $7197.00. Appellee, Drury, claims that appellant had no right to retain such a large amount from the purchase money, and for that reason refused to deliver the deed.

The dispute between the parties in the case at bar arises out of a difference of opinion between them as to the construction of the following clause in the bond: "The said William Drury to allow a discount of seven per cent on all payments made prior to March 1, 1896." The difference arises out of the two meanings of the word "discount."

The term "discount" may be understood, in a general sense, "as a counting off, an allowance or deduction made from a gross sum on any account whatever." (*Duncle* v. *Renick*, 6 Ohio St. 527). One of the definitions, given by Webster in his dictionary, is: "An allowance upon an

account, debt, demand, price asked, and the like; something taken off or deducted." In the Century Dictionary, one of the definitions given of discount is: "An allowance or deduction generally of so much per cent made for pre-payment or for prompt payment of a bill or account; a sum deducted, in consideration of cash payment, from the price of a thing usually sold on credit; any deduction from the customary price or from a sum due or to be due at a future time." One of the definitions of "discount" given by Bouvier in his dictionary, is as follows: "An allowance sometimes made for prompt payment." Where a merchant sells a bill of goods, and throws off a portion of the price for present payment, such a transaction is "discounting" in one sense of the term. So also, where a creditor makes a deduction from a sum due by a debtor in consideration of his paying the remainder before it becomes due, such a transaction may be said to be "discounting." (*Shover* v. *Accom. Sav. Fund and Loan Ass.* 35 Pa. St. 223). Appellant contends that the word "discount," as used in the bond, has the meaning above referred to, that is to say, means a rebate on the gross sum of the purchase price of the land of seven per cent without reference to time. The word "discount" in finance, or among bankers, has still another meaning. Such other meaning is thus expressed by Webster in his dictionary: "A deduction made for interest in advancing money upon a bill or note not due; payments in advance of interest upon money loaned." This second meaning is thus expressed in the Century Dictionary: "The rate per cent deducted from the face value of a promissory note, bill of exchange, etc., when purchasing the privilege of collecting its amount at maturity." The discounting of notes or bills has been defined to mean: "Advancing a consideration for a bill or note, deducting or discounting the interest which will accrue for the time the note has to run; the taking of interest in advance is called discount." (*Philadelphia Loan Co.* v. *Towner,* 13 Conn. 259). The

discounting of a note by a bank is understood to consist in the lending of money upon it and deducting the interest or principal in advance. (*City Bank of Columbus* v. *Bruce*, 17 N. Y. 515). "Discount" has also in this latter sense been defined to be: "The advance of money not due until some future period, less the interest which would be due thereon when payable." (*Meckler* v. *First Nat. Bank*, 42 Md. 592; 5 Am. & Eng. Ency. of Law, pp. 678-680). The appellee, Drury, contends, that the word "discount," as used in the bond in the case at bar, has the second meaning thus referred to. The latter species of discount may be called "interest discount."

The appellees were permitted by the court below to introduce letters and parol testimony, for the purpose of determining in what sense the parties understood the word "discount" when they used it in the bond. One of the questions in the case is, whether it was proper to allow the introduction of such testimony, or whether the contract should be interpreted according to the words used in it without reference to evidence *aliunde.* We do not deem it necessary to express any opinion upon this question, as related to the facts of the present case. In construing the bond, it would seem to be unreasonable, that the discount, whether it be given the one or the other of the definitions already referred to, should be made to apply to the first two payments, to-wit: the cash payment of $500.00 and the $4000.00 paid on December 30, 1895. As the contract required $500.00 to be paid in cash, there was no object in allowing a deduction of seven per cent therefrom, because the appellant had no right in any event to ask a credit as to that amount. Nor could it be said that interest should be deducted at the rate of seven per cent for any particular time, because the payment was to be made at once, and not after the lapse of any time. So, also, it would seem to be unreasonable to allow a discount of seven per cent, under either definition, on the payment of the $4000.00

made on December 30, 1895, because such payment was due on January 1, 1896; and to allow a discount upon the payment of $4000.00, because it was made prior to March 1, 1896, would be to allow appellant a discount for paying the $4000.00 when it was due, inasmuch as it was due on January 1, 1896. Discount is allowed for advanced payments before maturity, but if appellant was entitled to a discount for paying the $4000.00 at any time before March 1, 1896, he might wait until after its maturity on January 1, 1896, and pay it at any time between January 1, 1896, and March 1, 1896. This would seem to be an unreasonable construction of the contract. The words "all payments made prior to March 1, 1896," were probably used because of the following facts: In the original written proposition, made by appellant for the purchase of the land, he proposed to pay the $4000.00 on March 1, 1896. But when appellee, Drury, accepted the proposition, he changed the date for the payment of the $4000.00 from March 1, 1896, to January 1, 1896; and, when the bond came to be drawn, the same language was used in the bond as was used in the original proposition, namely, language referring to the making of the two payments, instead of the one, before March 1, 1896.

But, whether this is so or not, the words in the bond, providing for a discount of seven per cent, so far as they have reference to the first two payments, are to be interpreted in accordance with two well established rules of construction. The first is, that the court, in construing a written contract, will endeavor to place itself in the position of the contracting parties, so that it may understand the language used in the sense intended by the persons using it; in other words, the surrounding circumstances may be looked at in construing a contract, where there is any uncertainty of meaning. (*Wilson* v. *Roots*, 119 Ill. 379; *Turpin* v. *Baltimore, Ohio and Chicago Railroad Co.* 105 id. 11). The other principle of construction is, that, when the terms of an agreement are in any re-

spect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court; and, therefore, evidence of acts under the instrument is admissible, as showing the practical construction which the parties themselves have placed upon the instrument. (*Burgess* v. *Badger*, 124 Ill. 288; *Hall* v. *Bank of Emporia*, 133 id. 234; 2 Am. & Eng. Ency. of Law,— 2d ed.—p. 293).

Here, the testimony shows, that the appellant paid $500.00 in cash on August 14, 1895, without demanding any discount or deduction whatever; and, also, that on December 30, 1895, he paid the $4000.00 in full, without claiming any deduction or discount therefrom; and that the appellee, Drury, accepted these payments upon the dates named. This action of the parties would seem to amount to a construction of the contract by themselves, and showed that they regarded the discount, as inapplicable to the two payments of $500.00 and $4000.00. This interpretation is a reasonable one, and we are inclined to adopt it. It is unnecessary to determine the meaning of the word "discount," as applicable to the first two payments. by reason of the construction thus given by the conduct of the parties under the contract, or bond. We are the more inclined to this view because of the rule, that applications for specific performance, such as is the bill in the present case, are addressed to the sound legal discretion of the court, (*Harrison* v. *Polar Star Lodge*, 116 Ill. 279), and should not be granted for the purpose of carrying out any unreasonable interpretation of a contract.

It only remains to consider the discount of seven per cent as applicable to the third payment of $3200.00, which was due by the terms of the bond on or before the first day of March, 1897, and drew interest at seven per cent from March 1, 1896. This payment was made, less the deduction already specified, on February 28, 1896, and, therefore, prior to March 1, 1896. Hence, appellant is entitled

to a discount upon the amount of this third payment. It is immaterial, which of the definitions of the word "discount" is adopted in determining the amount to be deducted from this third payment, for the reason that, whether seven per cent be deducted therefrom, or whether an "interest discount" be calculated thereon, the result will be the same in either case. Seven per cent of $3200.00 is $224.00; and, as the $3200.00 was due on or before March 1, 1897, it had one year to run, and interest on $3200.00 for one year at seven per cent is $224.00. It is true, that the payment was made on February 28, 1896, and interest at seven per cent from February 28, 1896, to the maturity of the note on March 1, 1897, would be about $225.26, instead of $224.00. Appellees, however, cannot complain of the smaller allowance of $224.00, because it is in their interest, and appellant cannot complain of the same, because such smaller amount results from the application of his theory as to the meaning of the word "discount."

We are, therefore, of the opinion that the appellant was entitled to a deduction from the $3200.00 of $224.00, whether the one meaning or the other of the word "discount" be adopted. The court below in its decree did not allow such deduction.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court with directions to enter a decree, requiring the appellant to pay to the appellees all of the amount retained by him out of the last payment of the purchase money together with lawful interest thereon, except said sum of $224.00 which is allowed to him; and that, upon his making such payment, the deed, executed to him by the appellees for the premises in question, be delivered to him.

*Reversed and remanded.*