## H. KEMPNER v. T. L. PATRICK ET AL.

Decided May 15, 1906.

**1.—Several Documents—One Transaction.**

A promissory note and a cotton contract were executed at the same time, by the same parties and as parts of one transaction. In a suit upon the note, the contract was properly admitted in evidence.

**2.—Surety—Creditor—Impairment of Security.**

If a creditor, without the consent of the surety, parts with or renders unavailable any security or fund which he has the right to apply to the satisfaction of the debt, the surety is discharged to the extent of the value or the impairment of the value of such security; this results from the surety's right of subrogation—to pay the debt and take the security.

**3.—Same.**

If the creditor, without the consent of the surety, voluntarily advanced to the debtor an additional amount of money upon the security in the possession of the creditor, thus impairing or destroying the security, the surety would be discharged pro tanto, if such advancement absorbed any part of the security.

**4.—Same—Same.**

This, however, would not be the result if the additional advancement was made by reason of the terms of the original contract, or because of a general custom known to the surety.

**5.—Bill of Exception—Qualification.**

At the foot of a bill of exception was the following statement signed by counsel for appellees, "Approved, except that we can not concur in the conclusion of what the answer of the witness will be." The bill was allowed by the judge without qualification. Held, the above statement was no part of the bill.

**6.—Custom—General—Local.**

Evidence of a general custom in a particular locality as to certain transactions is material and competent, provided it is shown that the parties to such transactions knew of the same. If the custom was not confined to any particular locality knowledge of the same might be presumed.

Appeal from the District Court of Galveston County. Tried below before Hon. Frank M. Spencer.

*Kleberg, Davidson & Neethe,* for appellant.—The cotton contract was not relevant to the question whether or not the note had been paid, and was therefore inadmissible. Willis v. McNeill, 57 Texas, 474; King Manfg. Co. v. Solomon, 25 S. W. Rep., 450.

The note being complete in itself and free from ambiguity, no evidence was admissible to show what the intention of the makers of such

note was as to how it should be paid, and no evidence to show a prior or contemporaneous verbal agreement to discharge the liability on said note in any way except as shown by its terms. Dolson v. DeGanahl, 70 Texas, 622; Bailey v. Rockwell Nat. Bank, 61 S. W. Rep., 530.

The court erred in permitting the defendant Patrick to testify that the sureties did not consent to his drawing $40 a bale for cotton forwarded to Kempner. Willis v. McNeill, 57 Texas, 465; Kellog v. McCabe, 92 Texas, 199.

The court erred in excluding evidence offered to show that without honoring the drafts of $40 per bale Kempner could not have gotten possession of the cotton. Houston, E. & W. T. Ry. Co. v. Adams, 63 Texas, 206; Grimes v. Hagood, 27 Texas, 693; Willis v. Thacher, 20 Texas Civ. App., 235.

The debtor has the right to apply payments at the first instance. Eylar v. Read, 60 Texas, 389. If he fails to do so the creditor has the right. Larkin v. Watt, 32 S. W. Rep., 554; Thatcher v. Tillory, 70 S. W. Rep., 782. In the absence of application by either the law will apply such payments. Phipps v. Willis Bros., 11 Texas Civ. App., 189; Reed v. Corry, 61 S. W. Rep., 157.

One who does business at a certain place is chargeable with the custom and usage under which such business is done at such place. Meaher v. Lufkin, 21 Texas, 393; Robinson v. United States, 13 Wallace, 363; Bibb v. Allen, 149 U. S., 481.

*J. E. Starley* and *Wheeler & Clough,* for appellees.—Parol evidence is admissible to show that two writings executed at the same time between the same parties were executed as parts of one and the same contract and as forming one entire agreement. Howards v. Davis, 6 Texas, 180; Dunlap v. Wright, 11 Texas, 601; Eppinger v. McGreal, 31 Texas, 147; Taylor v. Hudgins, 42 Texas, 246; Weir Plow Co. v. Evans, 24 S. W. Rep., 38; Stiles v. Giddens, 21 Texas, 784; Henry v. Sansom, 36 S. W. Rep., 123; Masterson v. Burnett, 3 Texas Civ. App., 488; Thomas v. Hammond, 47 Texas, 49; Gulf, C. & S. F. Ry. Co. v. Jones, 82 Texas, 165; City of Waco v. McNeill, 29 S. W. Rep., 1109.

Where third parties sign a contract as sureties and the original parties thereto make a new contract or increase the liability without the consent of the sureties, they are discharged from all liability thereon, and may show that such action was taken without their consent. Lane v. Scott, 57 Texas, 367; Ryan v. Morton, 65 Texas, 258; Clark v. Cummings, 84 Texas, 614; House v. American Surety Co., 21 Texas Civ. App., 592; Sanders v. Hambrich, 16 Texas Civ. App., 461; Kiam v. Cummings, 13 Texas Civ. App., 199; Durrell v. Farnell, 88 Texas, 110; Benson v. Phipps, 87 Texas, 580; Brown v. Fountain, 3 Texas Civ. App., 231.

The terms of a written contract can not be changed by rules of usage and custom. Gano v. Palo Pinto Co., 71 Texas, 102.

Usages and customs are facts which must be alleged in the same manner as any other material fact. Moore v. Kennedy, 81 Texas, 147; Anderson v. Rogge, 28 S. W. Rep., 106; Norwood v. Alamo Ins. Co., 13 Texas Civ. App., 479.

REESE, ASSOCIATE JUSTICE.—H. Kempner sued T. L. Patrick, W.

L. Fuller, J. A. Stewart and Don Bilberry to recover the amount alleged to be due upon a certain promissory note for $1,200, executed by defendants, with interest and attorneys' fees, and also to recover of T. L. Patrick $598.43 additional on open account. The trial resulted in a judgment for plaintiff against Patrick for the amount claimed of him, and in favor of defendants Fuller, Stewart and Bilberry, as to plaintiff's demand against them.

Defendants Fuller, Stewart and Bilberry answered that they had signed the note sued on as sureties for Patrick under the following circumstances:

On or about April 15, 1904, defendant Patrick being desirous of borrowing the sum of $1,250 arranged with Kempner for the loan of that sum as an advance on 100 bales of cotton to be shipped by Patrick to Kempner, who was a factor and commission merchant doing business in the city of Galveston. Patrick lived and was engaged in business at Barstow in Ward County, Texas.

In consideration of said arrangement the money was lent or advanced to Patrick, and Patrick, with the other defendants as joint and several makers as appears from the face of the note, but in fact as sureties for Patrick, which was known to Kempner, executed to Kempner a promissory note for $1,250 dated April 15, 1904, payable at Galveston, Texas, seven months after date thereof, with eight percent interest and ten percent attorney's fees. At the same time Patrick executed a certain contract called a cotton contract, which was also signed by the other defendants herein as guarantors, and which is as follows:

"In consideration of the preparation by and agreement of H. Kempner, to receive, and handle and sell on the terms hereinafter stated, all the cotton which I may consign to her, between this date and the first of January next, and of the advance by her to me of the sum of one thousand two hundred and fifty dollars, in view of such consignments, I, the undersigned, hereby agree to consign to said H. Kempner, at Galveston, Texas, one hundred bales of cotton which I may handle or control during said period, and to pay all customary charges thereon, in Galveston, including a commission of $1.25 per bale to said H. Kempner, for the sale and handling thereof (which commission shall include all charges thereon for one month except freight) and guarantee to ship and consign her at least one bale of cotton for every twelve dollars and fifty cents so advanced as aforesaid, or which she may hereafter advance me in view of such consignment, or in default of which to pay her, on said first day of January next, in lieu of said commission the sum of $1.25 per bale for each and every bale of cotton hereby agreed to be shipped and then remaining unshipped, being the amount agreed upon as liquidated damages which she will suffer thereby.

"All of my indebtedness to said H. Kempner, of whatever account, shall be payable in Galveston County, Texas, and the nonpayment of any part thereof, when due, shall at her option immediately mature the whole of said indebtedness.

Dated at Galveston, Texas, April 15, 1904.

(Signed) T. L. Patrick.

"We hereby guarantee the faithful performance of the above contract

on the part of said T. L. Patrick, and agree to pay to said H. Kempner, in Galveston County, Texas, the amount of any default thereunder.

(Signed) W. L. Fuller<br>J. A. Stewart,<br>Don Bilberry."

It is alleged that the note and the cotton contract constituted one contract or agreement, and that in compliance with the cotton contract Patrick shipped to Kempner 100 bales of cotton of the value of $5,000 and in addition thereto 30 bales of the value of $1,500, whereby the note was fully discharged. That when the 30 bales of cotton were shipped Patrick instructed Kempner to apply the proceeds thereof to the payment of the note sued on, which would have fully discharged the same, but that Kempner without authority applied the same to the payment of other indebtedness of Patrick.

Defendants further allege that Kempner, without the consent of the sureties, agreed with Patrick to waive the time of payment of the note and thus changed the terms of the contract, whereby they were discharged; and further, that having the cotton in his hands Kempner, instead of holding the same for the security of the payment of the note, made to Patrick additional advances of $40 per bale thereon and applied the proceeds of the cotton to the payment thereof without the consent of said defendants, and in disregard of their rights. By reason of the facts pleaded it is claimed that the sureties are discharged from all liability on the note.

The evidence shows that the note and cotton contract were executed substantially as claimed by appellees and that they signed the note as sureties for Patrick, which fact was known to Kempner.

Before the shipment of any of the cotton Kempner agreed with Patrick to advance him an additional $40 per bale on all cotton shipped, and the cotton was shipped upon bills of lading with drafts attached for $40 per bale thereof, which Kempner paid. Kempner also advanced or lent Patrick in addition $500 on cotton shipped and to be shipped. After having shipped 102 bales of cotton, on November 14, 1904, Patrick wrote Kempner as follows:

"Barstow, Texas, November 14, 1904.

"Mr. H. Kempner, Galveston, Texas.

"Dear Sir: Yours of yesterday to hand, notifying me of my note being due, in regard to which I will say: You will find B-L for three bales of cotton. I want to ship you from now on and not draw on the cotton. I don't want to sell now, and I want you to hold my cotton and credit me with $40 per bale as I ship to you. I will have some 60 bales yet to ship you. Mr. Lawson, while here, said if I was not in a position to pay my note when it became due, that you would extend it for me, which now I will kindly ask you to do.

"Hoping that this will meet with your approval and to hear from you soon, I remain, respectfully yours,

T. L. Patrick."

To which Kempner replied:

"November 16, 1904.

"Mr. T. L. Patrick, Barstow.

"Dear Sir: We are in receipt of yours of the 14th, with bill of lading, for which we are obliged. It is unnecessary to credit you with $40 per bale on your note. Just send along your cotton shipments to cover your note approximately, and we will carry your cotton until you are ready to sell, and your note likewise. All we want you to do is to put sufficient cotton in hand to cover same. Yours truly,

H. Kempner."

Thereafter Patrick shipped 31 bales of cotton, upon which he received no further advances.

The cotton was held for some time at the request of Patrick, and when finally sold, in January, 1905, the net proceeds thereof lacked $598.43 of being sufficient to pay the $40 per bale advanced by Kempner in payment of drafts attached to the bills of lading, and the $500 also advanced, leaving nothing to be applied to the payment of the note.

The net proceeds of the 31 bales shipped after the date of the letter of November 14, and upon which no advances were specially made, amounted to $948.60. The note was due November 17, 1904.

The trial court did not err in admitting in evidence the cotton contract, as complained of in appellant's first assignment of error. The evidence shows that the note and cotton contract constituted in fact one contract. The terms of the cotton contract itself furnish indubitable evidence of this. Both instruments bear the same date and were executed at the same time and as parts of one transaction. The contract shows that the $1,250 secured by the promissory note was advanced by Kempner upon the cotton agreed to be shipped and consigned to Kempner by the contract, being $12.50 per bale on each of the 100 bales so agreed to be shipped. Appellant's contention that the note is to be treated as a separate and independent transaction can not be sustained. What may be properly said in this connection will dispose of many of the questions raised on this appeal without recurring in detail to the assignments of error by which they are more specially presented.

Kempner as a cotton factor had a lien on the cotton shipped under the contract, for the payment of the $1,250 advanced, for which appellees Fuller, Stewart and Bilberry were sureties, as signors of the promissory note. While this was a possessory lien and did not attach to the cotton until it came into the hands of Kempner, he owed to the sureties on the note the duty to preserve this lien and to do nothing to impair the same. This right of the sureties did not accrue alone upon the receipt of the cotton by Kempner, but they had a right and interest in the contract itself whereby Patrick had agreed to ship the cotton, in consideration of the $1,250 advanced upon the consignments. Kempner could not, without the consent of the sureties upon the note, absolve Patrick from the obligation to ship the cotton, for in this obligation the sureties had a direct interest. Nor could Kempner impose an additional and superior lien upon the cotton to be shipped under the contract by voluntary agreement to the detriment of the rights of the sureties upon the note to have the proceeds of the cotton applied to its payment. If he

did so, they were thereby discharged either wholly or *pro tanto* as the case might be. The doctrine applicable to such a case is thus stated:

"One of the most vital applications of equitable principles in the law of discharge is found in the rule which prevents the creditor from increasing the surety's risk by an improper disposal of securities. It may be stated as follows: If a creditor without the consent of the surety parts with or renders unavailable any security or fund which he has a right to apply in satisfaction of the debt, the surety is exonerated or discharged to the extent of the value of such security or to the extent of the impairment in its value. This principle is a corollary from the equitable doctrine underlying the surety's right of subrogation, and the law of subrogation therefore both supplies a means of testing the fact of discharge and defines its extent. The creditor is treated as a trustee of all securities in his possession, for the indemnity of the surety as well as for his own protection; and he is in equity bound to apply them to the advantage of both. Accordingly, if the creditor who has the means of satisfaction in his own hands chooses not to retain it and surrenders it to the principal debtor or allows it to pass out of his own hands, or for a consideration agrees to do so, or negligently impairs its value or loses control thereof, so that the right of the surety to be subrogated, should he at any time choose to pay off the indebtedness, is lost, the surety is discharged to the extent of his actual damage. Means of satisfaction, as used in this connection, signifies money or property in the lawful control of the creditor which he may rightfully retain and apply to the satisfaction of the debt without subjecting himself to an action, or funds within his reach which he is in duty bound so to apply." (27 Am. and Eng. Ency. of Law, pp. 516-518.)

This principle is so well sustained by authority that further citations in support thereof are unnecessary. It needs only to apply the principle to the facts of the present case. If, being under no necessity to do so in order to obtain the cotton, Kempner agreed with Patrick, without the consent of the sureties on the note, to advance him $40 per bale on the cotton in addition to the $12.50 per bale advanced for which the note was given and for which, as soon as the cotton should come into his hands, he would have a lien for the payment of the same, thus impairing or destroying the security held by him for the note, the sureties would be discharged; as it appears that the proceeds of the cotton were ample to pay the note and that the $40 a bale further advanced absorbed the entire proceeds. Having the obligation of Patrick to ship the cotton upon which, when received, he would have a lien for the security of the payment of the money advanced, secured also by the note, Kempner had no more right without the consent of the sureties on the note, and to their detriment, to impair the security afforded by this obligation, than he would have to impair the security upon the cotton after it was received. The rules here laid down, however, would not apply if, as is contended by appellant, Kempner was compelled, in order to get the cotton, to agree to advance the $40 on each bale in addition to the $12.50 per bale secured by the note sued on. Kempner had no means of compelling Patrick to ship the cotton. In the event he refused to do so he could only demand of the sureties on the cotton contract the $125 commissions for handling the 100 bales. If, then, Patrick refused to ship

cotton unless Kempner agreed to make a further advance of $40 a bale, Kempner's agreement to do so in no way operated to the detriment of the sureties.

Similarly the sureties would have no right to complain if it was understood by them at the time the contract and note were signed that Kempner was to make further advances on the cotton, or if such was the general custom in transactions of this kind at Galveston, and the sureties had knowledge of such custom, but not unless they had such knowledge.

Appellant offered to prove by Patrick that the purpose of borrowing the money from Kempner and of the signing of the cotton contract was the buying of cotton and shipping the same to Kempner of which purpose the sureties had no notice, and that unless he had been permitted by Kempner to draw $40 per bale Patrick could not have shipped cotton to Kempner under the contract and Kempner could not have received the cotton, because drafts or such advances were in each instance attached to the bills of lading. Objection of defendants to this testimony was sustained, to which plaintiff excepted and presents the point involved by an appropriate assignment of error.

Appellees contend that the bill of exceptions is eviscerated by the statement at the foot of the bill signed by counsel for appellees, "Approved except that we can not concur in the conclusions of what the answer of the witness will be." This statement, however, is no part of the bill of exception which is allowed and signed by the district judge, without qualification. The bill states fully what the witness, if permitted to answer the question, would have testified, and we must assume from the unqualified allowance by the judge that he intended to approve the bill in spite of the nonconcurrence of counsel for appellees. The testimony should have been admitted. If true, it was a complete defense to the claim of appellees that they were discharged by the act of Kempner in making this further advance on the cotton and applying the proceeds to the payment thereof.

Similar testimony was offered and upon the objection of appellees excluded as set out in the fifth and sixth assignments of error. The bills of exceptions are followed by similar statements signed by counsel for appellees, that they do not concur in the statement as to what the witness would have testified, if permitted to answer, and are in the same way allowed and signed without qualification by the district judge. The testimony set out in these bills of exceptions should have been admitted.

Appellant should also have been allowed to prove the general custom at Galveston among factors and commission men in regard to transactions such as the one the basis of this suit, provided it could further be shown that such custom was known to appellees. If it was a general custom and not confined to Galveston, probably such knowledge would not have to be shown, but would be presumed. (29 Am. & Eng. Ency. of Law, pp. 397, 398 n 2.)

We think that the letter of November 14, 1904, must be taken as an application by Patrick of the net proceeds of the 31 bales of cotton to the payment of the note. Kempner's reply shows that he so understood it. It does not matter that the cotton was not to be sold until ordered. Patrick had a right to direct that when sold the net proceeds should

be applied to the payment of the note and this application bound the proceeds when thereafter realized. We are of opinion, however, that under the terms of the cotton contract Kempner had the right to deduct from the proceeds of this 31 bales of cotton $12.50 a bale and appropriate that sum towards the payment of the $500 advanced. This $500 was advanced on the faith of the cotton contract to the extent of $12.50 per bale and Kempner had a factor's lien upon the 31 bales of cotton to that extent which was superior to Patrick's right to apply the proceeds to the payment of the note.

Other assignments of error do not require notice.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*