OVERSTREET et al. v. HANCOCK.
(No. 799.)

(Court of Civil Appeals of Texas. Amarillo. May 29, 1915.)

1. PRINCIPAL AND AGENT $\Leftrightarrow$89—ACTION FOR COMPENSATION — PLEADING — VARIANCE — SUIT FOR "COMMISSION"—PROOF OF "DISCOUNT."

Where an automobile agent sued for commissions, but proved that his compensation was to consist in the privilege of receiving an 18 per cent. discount on every car he purchased from his principals for a buyer from him, there was no variance between the allegation and proof, since "commission" is the compensation of a factor or other agent for services rendered in making a sale or otherwise, while a "discount" is a deduction from a list price, and so may amount to compensation.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216, 229–239; Dec. Dig. $\Leftrightarrow$89.

For other definitions, see Words and Phrases, First and Second Series, Commission; Discount.]

2. SALES $\Leftrightarrow$8—SALE OR AGENCY—CONSIGNMENT—CONSTRUCTION—INTENTION.

The intention of the parties as to whether there was a sale outright or a consignment to the plaintiff as agent for sale was the controlling factor in construing a contract whereby defendants allowed the plaintiff exclusive territory in which to sell their automobiles, his compensation to consist of an 18 per cent. discount from the list price, to which he was entitled on each car sold.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. $\Leftrightarrow$8.]

3. SALES $\Leftrightarrow$8—CONTRACT OF EMPLOYMENT—INTENTION — SALE OR CONSIGNMENT OF GOODS.

Where plaintiff contracted to sell defendants' automobiles in certain territory, and for cars sold was to pay defendants the list price, less his agent's discount of 18 per cent., such contract constituted the plaintiff a factor for the sale of cars, the transaction not being a purchase of cars by him, but a consignment of them to him as agent for sale, since defendants did not part with the title of the cars until sale should be made to the ultimate purchaser.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. $\Leftrightarrow$8.]

4. PRINCIPAL AND AGENT $\Leftrightarrow$85 — SALE OF AUTOMOBILES ON CONSIGNMENT—ADVANCES FOR CARS—DISCONTINUANCE OF AGENCY.

Where defendants by contract allowed plaintiff the exclusive right to sell their automobiles in certain territory, accepting an advancement of $250 from him to be applied on the purchase price of the first 10 cars sold, plaintiff was entitled to recover such advancement upon breach of the contract by the defendants.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 224–228; Dec. Dig. $\Leftrightarrow$85.]

5. PRINCIPAL AND AGENT $\Leftrightarrow$81—CONSIGNMENT OF AUTOMOBILES — INVASION OF AGENT'S TERRITORY—DAMAGES.

Where defendants contracted that plaintiff should have the sole right to sell their automobiles in specified territory for a specific time, and thereafter such defendants sold a car within such territory, plaintiff was entitled to recover his agreed commission of 18 per cent. on the list price of the car in an action for breach of the contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–214, 219, 223; Dec. Dig. $\Leftrightarrow$81.]

Appeal from Tarrant County Court; C. T. Prewett, Judge.

Action by V. T. Hancock against J. R. Overstreet and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Baskin, Dodge & Eastus, of Ft. Worth, for appellants. F. M. Bransford, of Ft. Worth, and B. W. Miles, of Coolidge, for appellee.

HUFF, C. J. The appellee, V. T. Hancock, as the assignee of S. E. McLellan, sued J. R. Overstreet and R. J. Loveless. The

petition alleges that in March, 1910, McLellan entered into an agreement with Overstreet and Loveless, by the terms of which McLellan was to have the exclusive right to sell the Detroiter automobile in Limestone county, Tex., and along the edge of Hill county, from March 12, 1913, until October 1, 1913, and during that time McLellan was to receive 18 per cent. commission on all automobiles sold in that territory. It was stipulated that McLellan was to deposit with appellants $250, $25 of which should be credited to him on the sale of each car within said territory, until 10 cars were sold, and the deposit money thereby returned; that $250 was so deposited and one car ordered, and McLellan received a credit for $25; that he began to solicit for the sale of the cars within the territory, and continued until June 13, 1913, when he ceased on account of the acts of appellants in violating the territory and in selling the Detroiter car therein to other parties, thereby defeating the efforts of McLellan, and thereby the contract was violated; that appellants sold a car to A. B. Reynolds, for $900, in the territory assigned him, and that McLellan was entitled to 18 per cent., or $162, commission on said sale by the terms of their agreement, which sum, and the $225 remaining of the deposit, was sued for; that appellants canceled a part of the territory assigned to McLellan; the appellee also alleges the assignment of the claim to him by McLellan. The appellant answered, denying that McLellan was to receive 18 per cent. commission, but on the contrary, McLellan agreed to handle the car in the territory and contracted for 10 cars, depositing $250 on the contract, which entitled him to 18 per cent. discount on all cars sold by him in their territory until October 1, 1913, and also denied that any of the deposit was to be returned if McLellan did not sell 10 cars. They also denied that McLellan was entitled to $162, or any other amount on account of the sale to Reynolds. McLellan testified:

"My agreement was for 10 cars, and I put up a deposit of $250, which secured me and by which I had the exclusive right to handle the Detroiter in Limestone county until October 1, 1913, with the privilege of a year's renewal or the return of the unused portion of the deposit, and I was to have 18 per cent. discount on all cars sold in that county. My deposit money was to be returned pro rata as I used the cars, and if any of my territory was cut off, the corresponding amount of the deposit was to be returned to me; that is to say, I was to be allowed a credit of $25 on each car until 10 were used. The list price of the cars was $900 and the freight $65, making the price to purchaser $965. The 18 per cent. was calculated on the list price of $900, so that the cars would cost me $803 each, including the freight."

He took one car and paid $803 less $25 rebate, out of the deposit. He took the car and began working the territory as agent for the sale of the cars, when another agent of appellant sold cars in the territory, of which fact McLellan wrote appellants, notifying them they should pay his 18 per cent.

commission. Shortly thereafter appellants sold Reynolds a car, in the territory assigned to McLellan, on which sale McLellan demanded $162. After that date McLellan did not sell, or make an effort to sell, in the territory, because of the claimed violation of the agreement. On June 7, 1913, appellants cut off the better part of the territory with the named towns therein, Mexia, Groesbeck, and Kossier, leaving to McLellan only Collidge, a small inland town. He then demanded a return of the $225 deposit remaining in the hands of appellants. This was refused. Appellants wrote McLellan the following letter, March 13, 1913:

"Dear Sir: According to our agreement yesterday evening, I am submitting you below an agreement whereby you can handle the Detroiter in Limestone Co., and am shipping you to-day the car. On the contract for ten cars with a $250.00 deposit you are entitled to 18% discount on all the cars sold in that county, between now and Oct. 1st, 1913. Your deposit money is to be returned pro rata as you use the cars, and I hereby acknowledge the receipt of $803.00 for one car, allowing you $25.00 rebate on that car and $250.00 deposit, making $1028.00. On each car you take you will be entitled to $25.00 rebate until you have taken nine more.

"This substantially covers the agreement and you will be entitled to work Mt. Calm, Hubbard and along the edge of Hill county, and any other territory until it is contracted for, lying tributary to you."

On April 25, 1913, McLellan wrote appellants that one Sanders had sold a car and was about to sell another near Collidge, and stated herein:

"Now if these facts are true, I shall certainly claim all the commissions on all the sales he makes. If he cut the price to make sales, it is his own lookout. I claim eighteen per cent. on $900.00, the price he should have gotten, plus the freight. I ask you to protect my interest in this matter."

Appellants answered this letter, writing to McLellan, April 28, 1913, that they had notified Sanders that he must let—

"your territory alone. I also notified him that in case he made any sales in your territory they would be considered your sales, and that you could demand the commission on them."

In June McLellan notified appellants that he would claim the commission on a Reynolds sale. Appellants replied, admitting the sale, but claimed it was made for Reynolds' son to work Freestone county. There were several other letters passed between the parties with reference to the territory and the commissions to be received, which resulted in a letter from appellants to McLellan that the towns mentioned in his territory were given to others, leaving him only Collidge therein. The facts show that the appellants were the state agents for the state of Texas, for the sale of the car at the time they entered into the agreement with McLellan, and during the time the transaction above mentioned was had. McLellan entered into the contract with appellants, for the purpose of selling the cars so handled by them, in the territory mentioned, and testified that he had the exclusive right to sell the cars in

that territory, under the agreement. The evidence shows that the claim of McLellan was assigned to the appellee, V. T. Hancock, who sues thereon. The case was tried before the court, and resulted in a judgment in favor of appellee, for the sum of $357.84.

[1, 2] The first assignment is to the effect that the allegations in the petition that appellants agreed to pay a commission on the sale of cars were not met by the proof, but under the undisputed evidence McLellan was allowed a discount on the purchase and sale of automobiles. The contention of appellants appears to be that the meaning of "discount" and "commissions" are different, and therefore the allegations to pay commissions is not supported by proof that discount was to be made on the list price of the car sold. We are referred to 8 Cyc. 334, for the meaning of "commission." One of the definitions given therein is:

"In commercial law a compensation to a factor or other agent for services to be rendered in making a sale or otherwise; a sum allowed as compensation to a servant, factor or agent who manages the affairs of others in recompense for their services," etc.

Appellants also refer us to 14 Cyc. 296, for a definition of "discount." We find from the definition there given it has a double meaning:

"In a general sense as a noun, a cutting off, an allowance or deduction made from a gross sum on any account whatever."

In some such sense as above defined it was evidently used by the parties to the transaction in question. One of the meanings by Webster is:

"An allowance upon an account, debt, demand, price asked, and the like; something taken off or deducted."

Century Dictionary:

"Any deduction from the customary price or from a sum due or to be due at a future time." Carroll v. Drury, 170 Ill. 571, 49 N. E. 311.

Bouvier:

"An allowance sometimes made for prompt payment."

When a merchant sells a bill of goods and throws off part for present payment, it may be said to be a discount on his part.

[3] In this case, the consideration for discounting the list price of the goods 18 per cent. by appellants was that McLellan should act for them in a given territory in the sale of the cars and make sales thereof. This was the compensation to be received by the agent for his services. This is clearly evidenced by the testimony as well as by appellants' letters. It was regarded by them as commissions or compensation to him as their agent in that territory, in which he was not to be disturbed by other agents. We think, therefore, the evidence supports the allegation. The intention of the parties in this kind of contract will control, as in all others, and as to whether the goods were sold or consigned to an agent for sale. Hamilton v. Willing, 73 Tex. 603, 11 S. W. 843. Under the testimony there were no cars, except one, delivered. The agent in certain territory was to sell the cars, and, when sold, he was to retain 18 per cent. on the list price; in other words, he was to pay to appellants $900, less the 18 per cent. This contract constituted McLellan, in a sense, a factor, for the sale of the cars. Appellants had at no time parted with the title or possession of the cars until the sale was made to the ultimate purchaser. Milburn Mfg. Co. v. Peak, 89 Tex. 209, 34 S. W. 102; Barnes Safe & Lock Co. v. Bloch Bros. Tobacco Co., 38 W. Va. 158, 18 S. E. 482, 22 L. R. A. 850, 45 Am. St. Rep. 846.

[4] Appellants, having discontinued the agency, were liable to McLellan for the advancements made to them on goods to be sold under the contract and to be reimbursed therefor. Mechem on Agency, § 2554, vol. 2 (2d Ed.); 19 Cyc. 154; Mills v. Johnston, 23 Tex. 308; Kempner v. Patrick, 43 Tex. Civ. App. 216, 95 S. W. 51.

[5] The second and third assignments are leveled at the judgment awarding $162 as commissions due McLellan on the sale made by appellants to Reynolds, on the ground it is urged that this was simply a breach of contract on the part of appellants, and that the commissions which McLellan would have received was not the measure of damages; that the contract fixed no measure of damages for such sale, and for that reason, under the pleadings and evidence, only nominal damages were recoverable.

The contract assigned to McLellan a specified territory for a specific time, in which to make sales; this territory, the evidence authorized the court to find, was exclusively the territory of McLellan, as agent, and he alone had the right to make the sales therein. Within the time specified by the agreement, and in the territory set apart exclusively to McLellan, the appellants sold to one of his customers a car. By the terms of the contract McLellan alone had the right to make such sale, and upon making it would have been entitled to $162 for his services. Appellants having voluntarily entered the territory within the time they had contracted the agent should sell therein, the agent will be entitled to his commission at the rate specified in his agreement with his principals. The agent in the territory had the right, within the time specified under the contract, to make the sale, and appellants had no right to resume control of such territory and sell therein in violation of their contract. Stringfellow v. Powers, 4 Tex. Civ. App. 199, 23 S. W. 313; Harrell v. Zimpleman, 66 Tex. 292, 17 S. W. 478. When the principals sold the car within the territory of the agent, his compensation will be, or should be, governed and controlled by the contract granting him the commissions named. Thompson v. Berg, 10 Tex. Civ. App. 200, 30 S. W. 454.

We find no reversible error, and the case will be affirmed.