### SAGAMORE IRON CO. v. ASH IRON CO.

Circuit Court of Appeals, Eighth Circuit.
February 8, 1928.

No. 7674.

Mines and minerals ⬄70(2)—Mining lease providing for payment of per cent. of market value of ore produced as rental did not permit deduction for "commercial discounts" allowed.

Provision in mining lease requiring payment as rent of 14 per cent. of the market value of the ore produced, defined in the lease as the gross return obtained on each separate sale, *held* not to permit lessee to deduct from the contract price of sales for "commercial discounts" allowed, where in the ordinary course of the trade it was customary to give a reasonable term of credit on sales and to allow discounts for anticipation of payments, citing Words and Phrases, "Discount."

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Action at law by the Ash Iron Company against the Sagamore Iron Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Abbott McC. Washburn, of Duluth, Minn. (Washburn, Bailey & Mitchell, of Duluth, Minn., on the brief), for plaintiff in error.

A. L. Agatin, of Duluth, Minn., for defendant in error.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

REEVES, District Judge. Plaintiff in error was defendant and defendant in error was plaintiff in the trial court, and each will be so styled in this opinion. The only question presented involves the proper construction of certain words used in a mining lease, dated May 8, 1918, as modified on March 29, 1919. In this lease plaintiff was the lessor and defendant the assignee of the lessee. The obligations of the lease were assumed by the defendant.

The words under consideration related to the subject of royalties and, supplemented with so much of the context as to make them intelligible, are as follows:

"The lessee will pay to the owner, on each gross ton of ore or ore product, * * * an additional royalty in an amount equal to fourteen (14%) per cent. of the *market value* of any such ore or ore product. (Italics are ours.)

"For the purpose of computing such additional royalties on ore or ore product removed from the demised premises and sold during the same calendar year, the *market value* * * *. shall be. held and considered to be the same. as the *gross return* per ton from time to time *obtained* for such ore or ore product, by the lessee or his assigns on each separate sale, * * * provided always that the lessee or his assigns, shall at all times conduct the selling of said ore or ore product from the mine or mines on said premises in good faith, and in the usual course of business, and that such lessee or his assigns shall use his best effort and judgment in so doing, but this shall not prevent the making by the lessee or his assigns of long time contracts even though not usually made for such length in the ore business. (Italics are ours.)

"For the purpose of computing such additional royalties on ore or ore products re-moved from the demised premises but not sold during the same calendar year, the *market value* shall be held and considered to be the same as the *highest value obtainable* by applying to such ore or ore product any of the prices used in computing the additional royalties on ore or ore product removed from the demised. premises and sold during that year. (Italics are ours.)

"The term 'sold during the same calendar year' as used herein shall mean ore delivered during such year upon sale contracts, covering that period, whether such contracts were made during that year or during any previous year, for one year or a term of years.

"Such additional royalty shall be paid on the fifteenth (15th) day of January of each year for the ore or ore product removed from any of the demised premises during the preceding calendar year."

The particular words which provoked the controversy may be found in the second paragraph quoted and are "gross return * * * obtained." Defendant construed these words as a restriction of royalties to 14 per cent. of the net receipts after deduction of commercial discounts. In other words, it is argued by the defendant that the 14 per cent. royalty should be computed upon the actual cash receipts, after allowing for commercial discounts, arising from the sale of its ore and ore products and not upon the contract price.

Prior to the regular annual payment of royalties in January, 1923, computations had been made upon the basis of market values as determined by sales contracts and payments were made accordingly, but subsequent to that date defendant withheld 14 per cent. of the discounts allowed from the contract price of ore or ore products sold and delivered and paid for. There is no controversy as to the amount of such deductions and if not allowable plaintiff became entitled to judgment for the sums sued for. The trial court denied the right to make the deductions and gave judgment for plaintiff.

In this discussion it should be borne in mind that the words "the gross return per ton from time to time obtained for such ore or ore product," as contained in the lease as modified, were made the equivalent of "market value" by the terms of the lease. The reason for the equation was that difficulty had been experienced in determining from time to time what the actual market value was. To obviate this difficulty, the lease was modified and the above equivalents were expressed. Moreover, for the purpose of meeting a similar embarrassment under but slightly different circumstances, it was provided

that "the market value shall be held and considered to be the same as the highest value obtainable." These explanatory provisions were inserted in the lease with full knowledge of a custom which provided for reasonable credit to purchasers and users of the ore and for appropriate discounts for payment before the end of the credit period. The lease as modified, and the circumstances under which it was executed, show that the parties intended to facilitate the computation of royalties by supplying means of determining market value when otherwise not ascertainable and to avoid the annoyance of a fluctuating or an unsteady market on some of the ores.

The words "gross return * * * obtained," "market value," and "the highest value obtainable" are all treated as equivalents in the lease as modified. While it is true that market value often signifies a value determinable upon the basis of a cash transaction (Kerr v. South Park Commissioners, 117 U. S. 379, 6 S. Ct. 801, 29 L. Ed. 924), yet as used in the case at bar it means such price as dealers in the goods are willing to receive and the purchasers are made to pay when the goods are bought and sold in the ordinary course of trade (Muser v. Magone, 155 U. S. 240, 15 S. Ct. 77, 39 L. Ed. 135).

The ordinary course of trade as shown by the evidence in this case involved a reasonable credit and the privilege to anticipate and discount payments. This was a commercial discount and is defined as "an allowance or deduction generally of so much per cent. made for prepayment or for prompt payment of a bill or account; a sum deducted, in consideration of cash payment, from the price of the thing usually sold on credit; any deduction from the customary price, or from a sum due or to be due at a future time." 3 Words and Phrases, First Series, p. 2090; Carroll v. Drury, 170 Ill. 571, 49 N. E. 311.

It was not intended that the market value ascertained in the manner agreed upon between the parties should be influenced by the commercial discount agreement between the lessee and its customers. Otherwise, heavy discounts and extended credits would be ruinous to what the parties intended to be a stabilized royalty computation. Moreover, the parties thus construed the lease as modified and acted upon such construction for approximately three years. This fact should have great if not controlling weight in determining a proper interpretation. George M. Jones Co. v. Canadian Nat. Ry. Co. et al. (D. C.) 14 F.(2d) 852, loc. cit. 855; 13 C. J. 546. Such is the only rational and probable meaning and should be preferred. W. J. Foye Lumber Co. v. Pennsylvania R. Co. (C. C. A.) 10 F.(2d) 437.

The foregoing discussion covers the point urged by defendant. Other assignments of error involve the admission or exclusion of evidence; but, as this decision is reached upon the undisputed facts, it is not necessary to notice such complaints.

The judgment of the trial court should be affirmed. It is so ordered.