[Civ. No. 14916. Second Dist., Div. Two. Dec. 4, 1945.]

EISENBERG'S WHITE HOUSE, INC. (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

T. H. Canfield and John A. Westwick for Appellant.

Robert W. Kenny, Attorney General, and John L. Nourse, Deputy Attorney General, for Respondents.

McCOMB, J.—From a judgment in favor of defendants after trial before the court without a jury in an action to recover a retail sales tax paid under protest, plaintiff appeals.

The stipulated facts are these:

Plaintiff at all times herein mentioned was engaged in the retail business of men's and boys' clothing and supplies in the city of Santa Barbara. From April 1, 1940, to March 31, 1943, plaintiff used in connection with and as a part of its retail business the "Sperry & Hutchinson Co-operative Discount System". This trading stamp system was maintained and advertised by plaintiff under a written contract with Sperry & Hutchinson Company of New York. The Sperry & Hutchinson Co-operative discount system as used by plaintiff was the ordinary trading stamp plan. Plaintiff issued to its customers the stamps which it had purchased from the Sperry & Hutchinson Company. The stamps were labeled "S & H Co-operative Discount Stamps" and each stamp had printed on the face thereof:

"S & H Green Co-Operative Discount Stamps, when redeemed in accordance with conditions printed below, are your extra compensation for cash payments made."

The stamps were issued and offered by plaintiff to those of its customers who paid cash for their purchases, either at the time of the purchase or before the 15th of the month next following the purchase. Customers were issued stamps on

the basis of one stamp for each ten cents of the purchase price paid, without regard to the kind or amount of merchandise purchased.

The stamps were redeemable by the customers at the Sperry & Hutchinson Company redemption office or store in Santa Barbara in goods, wares, and merchandise of the customer's own selection. The stamps were not redeemable in cash, but in a cash equivalent of merchandise. During the period of time in question from April 1, 1940, to March 31, 1943, plaintiff paid to the Sperry & Hutchinson Company for the privilege of using this trading stamp system and for stamps actually issued to plaintiff's customers as hereinbefore set forth the total sum of $9,783.87. The stamps were purchased by plaintiff in books of fifty pages, with one hundred stamps to the page and at $15 per book. The total sum paid by plaintiff to the Sperry & Hutchinson Company, to wit, $9,783.87, was not included by plaintiff in its gross receipts reported for sales tax purposes on the theory that this sum represented a cash discount within the meaning of·the California Sales and Use Tax Law*. On July 12, 1943, defendant State Board of

---

*Section 2(f) of the Retail Sales Tax Act (Stats. 1933, p. 2599, Deering's Gen. Laws, 1941 Supp., Act 8493) read as follows at the time the stamps were purchased.

" 'Gross receipts' means the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, including any services that are a part of such sales, valued in money, whether received in money or otherwise, including all receipts, cash, credits and property of any kind or nature, and also any amount for which credit is allowed by the seller to the purchaser, without any deduction therefrom on account of the cost of the property sold, except that in accordance with such rules and regulations as the board may prescribe, a deduction may be taken if the retailer has purchased property for some other purpose than resale, has reimbursed his vendor for tax which the vendor must pay to the State, or has paid the use tax with respect to such property, and has resold the property prior to making any use of such property other than retention, demonstration, or display while holding it for sale in the regular course of business, and without any deduction on account of the cost of the materials used, labor or service cost, interest paid, losses or any other expense whatsoever; *provided, however, that cash discounts allowed and taken on sales shall not be included,* and 'gross receipts' shall not include the sale price of property returned by customers upon rescission of the contract of sale, when the full sale price thereof is refunded either in cash or by credit, nor shall 'gross receipts' include the price received for labor or services used in installing or applying the property sold.

" 'For the purpose of this act the total amount of the sale price above mentioned shall be deemed to be the amount received exclusive of the tax hereby imposed; provided, that the retailers shall establish to the satisfaction of the board that the tax imposed hereunder had been added to the sale price and not absorbed by the retailer.'' (Italics.added.)

Equalization taking a contrary view of the law determined that three per cent of the sum paid by plaintiff for the trading stamps or $297.20 was due as a sales tax. When the tax was not paid by plaintiff, interest and penalties were added. Thereafter the amount claimed to be due by defendants was paid by plaintiff under protest and the present suit was instituted to recover the sum so paid.

This is the sole question necessary for our determination:

*Did the trading stamp which plaintiff issued to its customers constitute a "cash discount"?*

This question must be answered in the affirmative. The courts of California have held that trading stamps issued to customers under conditions identical with the facts in the instant case constituted a "cash discount."

In *Food & Grocery Bureau* v. *Garfield,* 20 Cal.2d 228, 232 [125 P.2d 3], our Supreme Court in commenting upon the character of trading stamps similar to those involved in the instant case says:

"It is well settled by the decisions of this court, as well as those in other jurisdictions, that the practice of merchants in issuing trading stamps with the purchase of articles is merely a method of discounting bills in consideration for the immediate payment of cash. (Citing *Ex parte Drexel,* 147 Cal. 763 [82 P. 429, 3 Ann.Cas. 878, 2 L.R.A.N.S. 588], and numerous other authorities.) The respondent impliedly concedes that a cash discount is not a gift, which is a transfer of property without consideration, but it argues that the appellant's plan is not a true cash discount.

"In the first place, the respondent asserts, the record is devoid of any allegation by the appellant that he does any credit business, and it follows, therefore, that since all of his customers pay cash, he cannot by means of trading stamps be said to be inducing any of them to pay cash rather than to buy on credit. The argument is fallacious. The fact that the appellant conducts his business on an all-cash basis does not preclude him from giving a cash discount. On the contrary, the cash discount is even more vital to the all-cash store than to the cash and credit store because the proprietor of the former has staked his entire enterprise upon the ability to attract cash trade and has been willing to forego the patronage of those consumers who buy their goods upon credit.

"The respondent next contends that the appellant's trading stamps are given only to those customers who ask for them, and a bona fide cash discount in commercial practice is given to all purchasers meeting the cash payment condition. It is apparent, however, that the plan does not lose its character as a cash discount merely because certain purchasers do not take advantage of the offer and request stamps.

"The plan is also attacked by the respondent as not being a cash discount because the customer cannot redeem them until he has accumulated five hundred of them. If the appellant were in fact making cash discounts by means of trading stamps, says the association, he would redeem the stamps when the amount evidenced thereby equals the value of one cent, and on a fifty cent cash sale would accept only forty-nine cents in payment. Substantially the same plan was upheld by this court in *Ex parte Drexel, supra,* as a method of allowing discount on cash payments. . . .

"Finally, the respondent urges, the appellant advertises his stamp as 'free,' and this circumstance, it is maintained, is inconsistent with a legitimate cash discount plan. But the advertisement upon which this claim is made shows that the stamps are given 'free' only upon the making of a ten cent purchase from the appellant. The purchase is the prerequisite to obtaining the stamp and furnishes the consideration for the distribution of stamps to those customers asking for them.

"It must be concluded, therefore, that the trading stamp plan adopted by the appellant does not constitute the making of a gift of one dollar in cash or one dollar and twenty-five cents in merchandise but is a discount given the customer in consideration of his paying cash."

Again, in *Ex parte Drexel,* 147 Cal. 763, 773 [82 P. 429, 3 Ann.Cas. 878, 2 L.R.A.N.S. 588], our Supreme Court says:

"Indeed, an ordinary trading stamp or coupon is in substance a mere form of allowing discounts on cash payments, and its issuance is entirely harmless and within the constitutional right of contract."

In *Weco-Products Co.* v. *Mid-City Cut Rate Drug Stores,* 55 Cal.App.2d 684, 688 [131 P.2d 856] (hearing denied by the Supreme Court) this court said:

"To denominate appellant's trading stamp plan as a device for giving a discount for cash payment on merchandise, rather than as a cut in price upon the article sold, gains force when we consider that the stamps are given uniformly and without

regard to the type of goods sold or the purchaser of the same. The only condition is that cash be paid for the purchases. Respondent's 'Fair Trade' minimum-priced articles are not singled out by appellant as objects to which alone the trading stamp privileges attach. No discrimination is made for or against them. The policy may be said to be of uniform application both as to goods sold and as to purchasers of the same, and logically falls into the classification of 'cash discount' rather than 'price cut'."

In view of the decisions of the appellate courts of this state it is clear that the plaintiff in issuing trading stamps was giving merely a "cash discount" and therefore under the terms of section 2(f) of the Retail Sales Tax Act plaintiff should not have been required to pay a tax on "cash discounts allowed and taken on sales." (See italicized portion of section 2(f) of the Retail Sales Tax Act in footnote.)

*Rast* v. *Van Deman & Lewis Co.*, 240 U.S. 342 [36 S.Ct. 370, 60 L.Ed. 679], and *Tanner* v. *Little*, 240 U.S. 369 [36 S.Ct. 379, 60 L.Ed. 691], relied upon by defendants as being in conflict with the decision in *Ex parte Drexel, supra,* 773, are not in fact in conflict with such decision since the Rast and Tanner cases merely held that a state legislature could constitutionally prohibit the issuance and use of trading stamps. Such cases did not pass upon the question of whether the giving of trading stamps constituted a cash discount or not. Defendants' contention that *Ex parte Drexel* is not authority because it was decided prior to the Rast and Tanner cases is likewise without merit for the reason that the Drexel case was cited with approval by our Supreme Court in *Food & Grocery Bureau* v. *Garfield, supra,* page 232, which case was decided subsequent to the decision of the Rast and Tanner cases and in fact cites them but makes no suggestion that they are in conflict with the Drexel case.

Neither is there any merit in the position that the above decisions are contrary to the ruling of the Board of Equalization. ■ The law is established in this state that an administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment. (*Whitcomb Hotel, Inc.,* v. *California Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].)

■ There is not any force in defendants' contention that the cash discount, though allowed, was not in fact "taken." The cash discount was "taken" when the customers accepted

the "stamps" and it is immaterial so far as the present litigation is concerned whether they subsequently used the stamps or not.

For the foregoing reasons the judgment is reversed and the trial court is directed to enter a judgment in favor of plaintiff in accordance with the prayer of the complaint.

Moore, P. J., and Fox, J. pro tem., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 31, 1946. Traynor, J., voted for a hearing.