BENNER TEA COMPANY, appellee, v. IOWA STATE TAX COMMISSION
(members), appellants.

No. 50260.

(Reported in 109 N.W.2d 39)

MAY 2, 1961.

Evan L. Hultman, Attorney General, and Gary S. Gill, Special Assistant Attorney General, for appellants.

Dailey & Dailey, of Burlington, and Whitfield, Musgrave, Selvy, Fillmore & Kelly, of Des Moines, for appellee.

GARFIELD, C. J.—The question presented is whether, in computing the sales tax due the state, a retailer is entitled to deduct from its gross receipts, as discounts, the cost to it of S&H stamps given customers. We must disagree with the trial court's affirmative answer to this question.

The case is here upon appeal by the state tax commission, granted by us under rule 332, Rules of Civil Procedure, from the trial court's adjudication of a law point under rule 105, R. C. P. For convenience we disregard the fact members of the commission are joined as defendants. Plaintiff, Benner Tea Company, is a retailer with its principal place of business in Burlington.

Plaintiff made a written contract with Sperry & Hutchinson Company, a New Jersey corporation, to use what the contract calls its "Co-operative Cash Discount System" under which plaintiff purchases "Co-operative Discount Stamps" from "S&H" and offers them to its customers at the rate of one stamp for each ten cents paid for merchandise at the time of sale or on or before the 15th of the next month. S&H furnishes plaintiff stamp books in which its customers may paste the stamps and agrees to redeem them when so collected, at S&H redemption centers, by giving them cash or merchandise, apparently at its option, subject to conditions of the contract and as printed in its merchandise catalogues and stamp books. See Sperry & Hutchinson Co. v. Siegel, Cooper & Co., 309 Ill. 193, 140 N.E. 864, 867, and citations.

Although the contract provides for redemption of the stamps in cash or merchandise, plaintiff's petition alleges merely that

the stamps are redeemable for valuable personal property. It seems we would be justified in accepting this allegation as true. In any event it is not claimed S&H ever redeems its stamps at the rate plaintiff pays for them and for what the contract designates "the services to be performed by" S&H. One such agreed service is to furnish plaintiff advertising signs in quantities sufficient for use inside and outside its store to make known to the public that plaintiff has adopted the S&H "Co-operative Cash Discount System."

Section 422.43, Code, 1958, imposes "a tax of two percent upon the gross receipts from all sales of tangible personal property * * *."

Section 422.42, paragraph 6, thus defines gross receipts: " 'Gross receipts' means the total amount of the sales of retailers, valued in money, whether received in money or otherwise, provided, however, that discounts for any purpose allowed and taken on sales shall not be included, nor shall the sale price of property returned by customers when the full sale price thereof is refunded * * *. Provided further, that on all sales * * * under conditional sales contract * * * only such portion of the sale amount thereof shall be accounted, * * * as has actually been received in cash by the retailer * * *."

As before indicated, our problem is whether plaintiff may exclude from its gross receipts, as "discounts for any purpose allowed and taken on sales", the amounts it pays S&H under the contract between them.

Our statutes do not define "discounts." It is therefore necessary to look elsewhere for its meaning. Code section 4.1, paragraph 2, provides: "Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning."

The definition of "discount" in Webster's New International Dictionary, Second Edition, includes "an allowance upon an account * * * usually made in consideration of prompt or cash payment; something taken off or deducted."

The most pertinent definition of the word in Webster's New

Twentieth Century Dictionary is "a deduction from an original price or debt, allowed for paying promptly or in cash."

The definitions of "discount" in 26A C. J. S., page 973, taken from court decisions, are much like those found in the dictionaries. Perhaps the most common definition is "something taken off or deducted, a reduction."

Black's Law Dictionary, Fourth Ed., defines the word as "an allowance or deduction made from a gross sum on any account whatever."

"Discount is an abatement from the face of the account, and the remainder is the actual purchase price of the goods charged in the account. A purchaser entitled to discounts never owes the face of the bills. * * * His debt is the net of the bills after the agreed discount has been deducted * * *." Napier v. John V. Farwell Co., 60 Colo. 319, 324, 153 P. 694, 695.

Several definitions substantially the same as those above quoted are found in Carroll v. Drury, 170 Ill. 571, 49 N.E. 311, 312.

"* * * the word discount is * * * widely used in the sense of a rebate or allowance for punctual payment, * * *." Tatelbaum v. Chertkof, 212 Md. 475, 480, 129 A.2d 680, 683.

" 'The word discount * * * means simply to buy at a reduction * * *.' " Industrial Savings & Loan Co. of Charleston v. Schultz, 117 W. Va. 196, 197, 185 S.E. 3, 4.

Of course "discount" is frequently used in the sense of discounting commercial paper. The legislature could not have intended it to have this meaning in the sales tax law and it is not so contended. Whether the word is construed according to its context and approved usage or as having acquired a peculiar and appropriate meaning in law, the only sense in which the legislature could reasonably have used it here is, in accordance with the above definitions, as an allowance or reduction in price or the equivalent. No other meaning is suggested.

It is clear to us that the cost to plaintiff of S&H's so-called discount system is not a discount on sales to plaintiff's customers within the meaning of section 422.42, paragraph 6. It is a fair deduction from our general knowledge of trading

stamps and from the contract between them that *at least* a substantial part of what plaintiff pays S&H is for advertising and promotion of plaintiff's business and profit to the contracting parties. Plaintiff's customers receive no direct benefit from this part of plaintiff's cost and no allowance or deduction for any of it is made in the price of what they buy. In fact what S&H really sells plaintiff is an advertising and promotion service, not trading stamps. The contract refers to the payments to S&H as having been made for "its services" and "use of its system." Plaintiff is merely the licensee or agent of S&H in issuing the stamps to customers of the store and they must be returned to S&H before anything of value may be obtained for them.

(As long ago as 1905 it was said the general character of trading stamps is a matter of common knowledge. Ex parte Drexel, 147 Cal. 763, 82 P. 429, 431, 2 L. R. A., N. S., 588, 3 Ann. Cas. 878. Since then knowledge of them has become much more common.)

▆ Although we are required to decide only whether what plaintiff pays S&H is a discount on sales to its customers, not to determine the precise nature of the transaction, we think plaintiff paid S&H for use of a plan to attract customers and induce them to buy other merchandise to the extent that will make the stamps of value for redemption purposes. In short, as previously stated, plaintiff bought an advertising and promotion device, not one for reducing the price to its customers.

The conclusion just stated is in substantial accord with contentions successfully urged by issuers of trading stamps in other cases. Weco Products Co. v. Mid-City Cut Rate Drug Stores, 55 Cal. App.2d 684, 131 P.2d 856, 858, 859; Sperry and Hutchinson Co. v. Margetts, 25 N. J. Super. 568, 581, 96 A.2d 706, 712 (Stamps "are not an abatement, nor a rebate, allowance or benefit reducing the price.") ; Bristol-Myers Co. v. Lit Bros., Inc., 336 Pa. 81, 6 A.2d 843, 844, 847; Gever v. American Stores Co., 387 Pa. 206, 127 A.2d 694, 695.

The California and Pennsylvania cases just cited hold the giving of stamps with the sale of branded merchandise at minimum prices fixed by the manufacturer is not a price reduction

in violation of the state Fair Trade Act. The New Jersey precedent holds the giving of stamps does not diminish the price at which gasoline or other products are sold in violation of a statute prohibiting rebates and allowances which permit purchases below the posted price.

We are aware that in the opinions just cited and others statements are to be found that the giving of stamps is a form of allowing discounts for cash payments. In most instances such statements are dicta and, as the trial court's ruling indicates, difficult to reconcile with the actual decision that the practice involves no allowance or reduction in price.

Plaintiff has cited three California precedents other than the Weco Products Company opinion in which the statement is found that giving stamps is a form of discount for cash. Only one, Eisenberg's White House, Inc. v. State Board of Equalization, 72 Cal. App.2d 8, 164 P.2d 57, is in point here. The statements appear to stem largely from what is said as dictum in a single sentence, without citation of authority, in Ex parte Drexel, supra, 147 Cal. 763, 773, 82 P. 429, 434, 2 L. R. A., N. S., 588, 3 Ann. Cas. 878, where a statute prohibiting issuance of certain trading stamps was held unconstitutional as an infringement of the right of freedom of contract. The Drexel opinion also states, "It appears to be simply a device to attract customers, or to induce those who have bought once to buy again. * * *." (Page 771 of 147 Cal., page 433 of 82 P.)

The legislature evidently intended to subject to the sales tax only the gross receipts the retailer actually is paid and section 422.42, paragraph 6, excepts not only discounts, but also refunds of the purchase price of property returned by customers and sums not yet received on conditional sales contracts. And section 422.46 allows a credit for sales tax paid on accounts found to be worthless and actually charged off for income tax purposes.

Although no tax is imposed on what the retailer does not receive, it seems equally apparent one is imposed on what he does receive, not on something less. Apparently plaintiff received from its customers the full price of its merchandise plus sales tax thereon. There seems no good reason why it

should not pay over to the State the tax it collected. The sales tax statutes are not concerned with what the retailer parts with in return for what he is paid. No deduction from gross receipts is allowed for the cost of something the retailer gives his customer as a bonus or premium in addition to the goods for which the customer pays. To allow plaintiff to deduct from its receipts what it pays S&H would permit computation of the tax on less than it receives. Although such payments are legitimate items of plaintiff's business expense they may not fairly be classed as discounts to its customers.

There are two reported decisions on the question presented to us, one by a court of last resort, the other by an intermediate appellate court. The former is State Tax Comm. v. Ryan-Evans Drug Stores, 89 Ariz. 18, 357 P.2d 607, 610, 611, a unanimous decision filed six months after the ruling here on appeal. It involves a claim for "cash discounts allowed and taken" of $173,730 from "gross proceeds of sales." The other case is Eisenberg's White House, Inc. v. State Board of Equalization, supra, 72 Cal. App.2d 8, 164 P.2d 57, to which one Judge dissented. The Arizona precedent appeals to us as better reasoned and more persuasive. Both involve S&H trading stamps. The Eisenberg opinion is largely based on dictum to which we have referred in previous cases that trading stamps are a form of discount for cash.

This from the Arizona case fully supports our decision (pages 610, 611 of 357 P.2d): "* * * It is an inescapable conclusion that the Legislature did not intend to tax the retailer on money he did not receive; but on the other hand, the Legislature did not intend to allow the retailer to pay tax on something less than that which he did receive. To hold that 'green stamps' are a 'cash discount' would accomplish this. The obvious fact is that the company's plan is a promotion scheme designed to induce the public to purchase merchandise from its dealers exclusively, and it appears that even though the company calls its elaborate plan a 'co-operative cash discount system', in reality, it is nothing more than a bonus or unique and attractive form of advertising and as such constitutes an ordinary business expense.

"It must necessarily follow that in the opinion of this Court 'green stamps' are not a cash discount under * * * A. R. S. section 42-1301 et seq., and the cost of the stamps cannot be deducted from the 'gross receipts' in computing the amount of sales tax owed to the State of Arizona."

Plaintiff tries to distinguish the Arizona precedent on two grounds. First, the statutory exclusion there from "gross proceeds of sales" is of "cash discounts allowed and taken on sales." Our exclusion is "discounts for any purpose allowed and taken on sales." Plaintiff argues "the Arizona statute is limited to discounts given in cash. Further, while it may be conceded an element of advertising is involved in a trading stamp discount, it must be pointed out that a discount for an advertising purpose is clearly a 'discount for any purpose' within the terms of the Iowa statute." The argument is unsound.

Plaintiff's argument concedes "a cash discount is a discount given for the prompt payment of cash, not necessarily in cash. This is the accepted dictionary definition of the term." The definition then is set out. No one has suggested that if trading stamps or what a retailer pays in part therefor constitute a discount on sales it is a discount other than for cash. Plaintiff's case is based on the contention that what it pays S&H is a discount on sales for cash. So the reference in the Arizona statute to "cash discounts" is immaterial here.

Plaintiff's argument quoted first above overlooks the fact the discount to which our statute refers is obviously on sales to the customer. A reduction in the price to him in consideration for his advertising plaintiff's business would doubtless be a "discount for any purpose." But no such claim is made here. Nor do the words "for any purpose" in our statute enlarge the meaning of "discount." They merely make immaterial the purpose for which it is allowed—whether for cash, quantity buying (commonly called a "trade discount"; Standard Oil Co. v. State, 283 Mich. 85, 276 N.W. 908, 911) for payment in advance or for any other lawful purpose.

The second ground on which plaintiff attempts to distinguish the Arizona decision, supra, is that Arizona does not collect a sales tax upon merchandise given in redemption of the

stamps, whereas plaintiff asserts Iowa does. However, assuming this assertion—for which the record is silent—to be true, the practical effect of the tax on the redemption transaction in the two states is about the same. As appears from the Arizona opinion, the state subjects the trading stamp company to a use tax upon the premium merchandise. Moreover, the question whether the redemption transaction is taxable, and if so, in what manner, is not before us nor is it involved in the Arizona precedent. Both cases are concerned only with whether what a retailer pays S&H may be deducted from gross receipts as a discount on sales in computing the sales tax.

Nothing herein is contrary to anything decided or said in Sperry & Hutchinson Co. v. Hoegh, 246 Iowa 9, 65 N.W.2d 410, which held our "gift enterprise" statutes, sections 553.15 to 553.18, Code, 1950, unconstitutional. Sole ground of the decision is that the statutes prohibited issuance of trading stamps redeemable by a third party (in effect, a stamp company) but not those redeemable by the issuing dealer. Hence the statutes were held to be discriminatory class legislation. The opinion takes note of support for the view that plaintiff's system is a cash discount plan but leaves the point undecided. Plaintiff concedes the case is not authority on the issue here presented. —Reversed.

All JUSTICES concur.