**A. W. CULLUM & COMPANY, Inc.,**
**Appellant,**

v.

**Robert S. CALVERT, Comptroller of the State of Texas, Appellee.**

**No. 11716.**

Court of Civil Appeals of Texas,
Austin.

Jan. 21, 1970.

Rehearing Denied Feb. 11, 1970.

---

**420**

Worsham, Forsythe, Sampels & Busbee,
Dan Busbee, Jr., Dallas, for appellant.

Crawford C. Martin, Atty. Gen., Nola
White, First Asst. Atty. Gen., Hawthorne
Phillips, Exec. Asst. Atty. Gen., John R.
Grace and Alfred Walker, Asst. Attys.
Gen., Austin, for appellee.

O'QUINN, Justice.

This is a sales tax case involving sums
aggregating $24,190.62 paid under protest
by appellant to the Comptroller of Public
Accounts based upon deficiency determina-
tions covering tax periods (1) from Sep-
tember 30, 1963 through July 31, 1967, and
(2) October 1, 1966 through July 31, 1967.

The parties stipulated and agreed on all
facts, and the cause was tried before the
court without a jury. The trial court de-
nied appellant recovery and entered judg-
ment for the State from which this appeal
has been taken.

As it existed at the times involved in
this case, the Texas Sales Tax Act re-
quired each retail merchant situated as
appellant to remit to the Comptroller two
percent of its receipts from the sale of all
tangible personal property. Article 20.02,
Title 122A, Taxation-General, V.C.T.S.
The taxes were collected by the retailer

from its customers in accordance with a "bracket system" set out in Article 20.021 of the Act.

In calculating sales taxes appellant arrived at a total of its retail receipts, deducted from that total expenses incurred through distribution of trading stamps to its customers, and then remitted two percent of the balance to the Comptroller.

In making deficiency determinations the Comptroller ruled, and the trial court found, that appellant should have remitted two percent of the total receipts, without deducting expense of the trading stamps. The Act as involved in this case is as the law existed prior to the amendments of 1968.

We affirm the judgment of the trial court.

Appellant contends under five points that it was error (1) to determine that distribution of trading stamps does not constitute sale of intangible personal property which is nontaxable; (2) in the alternative, error to determine that under the Comptroller's ruling appellant may not deduct the cost of trading stamps as representing cash discounts; (3) in further alternative, error to find the Comptroller did not exceed his authority in defining "cash discounts;" (4) in further alternative, error to hold that the ruling does not subject consumers to double taxation; and (5) in further alternative, error to find that the sales Tax Act does not allow cost of trading stamps to be deducted from gross sales as cash discounts.

The record shows that appellant entered into a licensing agreement with the trading stamp company by which the stamp company furnished trading stamps and books for a fee, measured by the amount of stamps ordered, and agreed to redeem the stamps when presented at a redemption store established by the stamp company. Under the arrangement, the retailer delivered trading stamps to its customers, in conjunction with the sale of merchandise, usually at a ratio of one stamp for each designated amount or unit of the purchase.

The retailer did not make a separate charge for the stamps, and the selling price of the merchandise was not reduced when the customer declined the stamps. The stamp company published a catalog showing the premium articles that could be acquired upon surrender of a stated number of stamps. The customer was able to obtain the article of choice listed in the catalog by delivering the required number of stamps to the redemption store.

By terms of the licensing agreement, title to the stamps remained in the stamp company, without regard to which party had physical possession of the stamps, and complete right to possession remained in the trading stamp company. The stamps and collectors' books were never sold to the collectors, nor to the merchants issuing the stamps, nor to any other persons. The stamp company retained title and the right to possession of the stamps and the books at all times, subject only to the rights of the collectors of the stamps to redeem them for merchandise according to specified rules and regulations set out in the notices given to the collectors in the books and stated in the contract between the retailer and the stamp company.

The only right the customer had in the stamps distributed to him by the retailer was to paste the stamps in the books and present them to the stamp company for redemption. The customer was not permitted to transfer, dispose of, or use the stamps for any further purpose, without consent in writing of the trading stamp company.

In practice, stamps were offered to all customers, but some customers declined to take them. The price which formed the basis for distribution of the stamps, was the selling price of the merchandise sold by the retailer.

The retail merchant collected from the customers the full amount of the Texas sales taxes to be paid by the purchasers, based on the sales price of the merchandise, regardless of whether the purchaser declined or not to take the proffered stamps.

No rebates of sales taxes were made by the retailer to any of the purchasers.

Trading stamps were delivered to appellant by the stamp company as a part of a total program or plan purchased from the stamp company. For the consideration paid to the stamp company, appellant also received the collectors' books, in which stamps were required to be affixed in order to be redeemable, as well as catalogs showing articles to be acquired upon surrender of stated numbers of books filled with stamps. The catalogs and empty books were distributed to appellant's customers at its stores without charge. In order to be completed, a book had to have 1200 stamps affixed on the pages in accordance with instructions found in the book. The minimum number of books for use in redemption was one-fourth of one book. It would appear from the record that to ascertain how many stamps have been, or would be, redeemed under this system presents insurmountable difficulties.

It is settled law that appellant had the burden of establishing its right to receive a refund of taxes paid under protest, as well as the amount of the refund to which it is entitled. Calvert v. Union Producing Company, 154 Tex. 479, 280 S.W.2d 241 (1955). The amount of the protested tax does not appear to be in controversy. Only appellant's right to a refund is in issue.

At the time the taxes in question accrued, the Sales Tax Act provided that

"There is hereby imposed a limited sales tax at the rate of two per cent (2%) *on the receipts from the sale at retail of all tangible personal property* within this State." Article 20.02 (Emphasis added)

The statute without ambiguity levies the tax on all the receipts from sales by the retailer of tangible personal property. The Comptroller contends, and we think properly, that the full amount of the receipts is taxable. Article 20.021(F) provides that

"* * * it shall be presumed that all gross receipts are subject to the tax until the contrary is established."

The Tax Act defines "receipts" as meaning "* * * the *total amount of the sale * * * of the retail sales of retailers,* valued in money, whether received in money or otherwise, *without any deduction on account of* * * * cost of materials used, labor or service costs, interest paid, losses or *any other expense.*" Article 20.-01(D) (1). (Emphasis added)

We conclude that the plain meaning of the statute, as construed by the Comptroller and as found by the trial court, is that the tax is ascertained by calculating two percent of the total receipts, without deductions from the receipts of any expense occasioned by purchase and distribution of trading stamps.

We do not find Texas case law, nor have the parties cited Texas cases, determining the questions raised under appellant's theories of this case. Authorities from other jurisdictions are collected in 90 A.L.R.2d 338 following full presentation of State Tax Commission of Arizona v. Ryan-Evans Drug Stores, 89 Ariz. 18, 357 P.2d 607, 90 A.L.R.2d 332.

In general appellant argues three theories in support of its claim to the right of refund.

The first theory is that issuance of the trading stamps to customers of the retailer is the sale of intangible personal property which is nontaxable. We find no merit in this position, principally because by express written agreement no consideration is paid for the stamps. Two kinds of trading stamps were used by appellant and both stamp companies negative the payment of consideration in the redemption book. S & H Green Stamps states to the customer that the "stamps are your *reward for prompt cash payment* to the merchants issuing them." The Frontier redemption book informs the customer that "The stamps are *furnished to you as evidence of*

*cash purchases* from our subscribers." (Emphasis added in each instance)

The retail customer did not purchase the stamps. The stamps were given the customer because he had already purchased and made prompt payment for something besides the stamps. The tax would fall on whatever amount the customer paid the retailer as a "prompt cash payment" or as "cash purchases" involving merchandise of the retailer.

Appellant argues that the customer is presumed to understand that a part of the consideration he pays is for the trading stamps. Also, it may be observed, the customer must know that in the cost of merchandise will be included the cost of paper sacks, advertising, air-conditioning, shopping carts, plastic bags, persons to sack and carry merchandise to the customer's automobile, and many other costs of promoting and doing business. The Sales Tax Act expressly provides that none of these goods and services is deductible from the gross receipts although the customer in the final accounting pays for such expenses.

The contention that the taxes paid by appellant under protest represent taxes on receipts for intangible personal property places appellant in the position of having collected from its customers taxes not imposed by law. To be consistent, appellant would total the sales price of taxable articles bought by the customer and deduct the cost to appellant of the trading stamps due the customer before collecting the state sales tax on the difference. It is obvious from the record that appellant at no time followed that procedure, but instead collected the tax on all taxable merchandise sold and later sought to remit to the State a different amount calculated on the difference between gross receipts and appellant's cost of distributing trading stamps.

Appellant's second theory is that the trading stamps constituted cash discounts. Under the Sales Tax Act, true cash discounts are not included in "receipts" and are not included as a part of "sales price."

Articles 20.01(D) (2) and 20.01(L) (3). We agree with the position of the Comptroller that cash discounts constitute money never paid by the customer and never received by the merchant. The sales tax is levied on the receipts of the merchant obtained from the customer and is not levied on something never paid and never received.

Cash has been defined as that which circulates as money. Flower v. Dort, 260 S.W.2d 685 (Tex.Civ.App., Fort Worth, 1953, writ ref., n. r. e.); Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779 (1951). Trading stamps are not money, nor do they circulate as money. The stamps are not sold and may not be transferred. The only right the customer acquires is to paste the stamps in a book and turn them in for redemption, not in cash, but in premium articles. The customer may not dispose of the stamps or make any different use of them without consent in writing of the trading stamp company.

The question of whether trading stamps are cash discounts not subject to the sales tax has been decided in at least three jurisdictions. In 1945 trading stamps in California were held to be cash discounts not subject to the sales tax although given only to customers requesting them and not used by all such customers. Eisenberg's White House v. State Board of Equalization, 72 Cal.App.2d 8, 164 P.2d 57.

The contrary view later was taken in Arizona and in Iowa. State Tax Commission v. Ryan-Evans Drug Stores (1960), 89 Ariz. 18, 357 P.2d 607, 90 A.L.R.2d 332; Benner Tea Company v. Iowa State Tax Commission (1961), 252 Iowa 843, 109 N.W.2d 39.

The Arizona court characterized the trading stamp plan as a bonus or unique and attractive form of advertising and said that as such it constituted an ordinary business expense. Further, it was said, that the legislature did not intend to allow

the retailer to pay a tax on less than he actually received from the customer, a condition that would exist if stamps were treated as cash discounts.

We find the reasoning and logic of the Arizona and Iowa cases applicable to the facts of this cause. For example, the Iowa court observed that the tax statute, which allowed only discounts to be deducted, did not concern itself with that which the retailer parted, in return for what he was paid. "No deduction from gross receipts," the court pointed out, "is allowed for the cost of something that the retailer gives his customer as a bonus or premium in addition to the goods for which the customer pays." See 90 A.L.R.2d 338.

We hold that trading stamps distributed by appellant to its customers did not constitute cash discounts as contemplated by the statute and were not deductible.

Appellant argues that to hold that the cost of trading stamps may not be deducted from receipts of the retailer before calculating the tax to be remitted to the Comptroller causes the customer to be taxed when he receives trading stamps from the retailer and taxed again upon redemption of the stamps.

Although it is doubtful whether appellant, who is the collecting agent for the State and is not the taxpayer, has a justiciable interest in the question of whether the customer, who pays the tax, is subjected to double taxation, we will dispose of the contention.

When the stamps were distributed to the customer, the tax paid at that time was calculated on the price paid for merchandise purchased. The price of the merchandise and the tax remained the same whether the customer accepted or refused the stamps. No tax was paid on the stamps. If the customer later sought to redeem the stamps, he paid a tax on the article received in the redemption transaction. Since the stamps were distributed to the customer as a reward for paying cash for the merchandise without a separate charge made for the stamps, and since title to the stamps did not pass to the customer, the transaction did not amount to a sale of the stamps, and no tax was imposed. The only tax paid by the customer in relation to the stamps was imposed when and if the customer decided to claim a premium article under his right to redeem the stamps.

We have examined with care all points of error brought by appellant and all points are overruled.

The judgment of the trial court is in all things affirmed.

Affirmed.