**INDIANA DEPARTMENT OF STATE REVENUE, Defendant-Appellant,**

v.

**The KROGER COMPANY, Plaintiff-Appellee.**

No. 1–283A47.

Court of Appeals of Indiana, First District.

Sept. 20, 1983.

Rehearing Denied Nov. 1, 1983.

Linley E. Pearson, Atty. Gen., Wm. Eric Brodt, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

J.B. King, Stephen H. Paul, Baker & Daniels, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

STATEMENT OF THE CASE

In an action initiated by the Kroger Company (Kroger), the Johnson County Circuit Court determined Kroger was entitled to a refund of $127,498.52 for gross income taxes paid for the taxable years of 1968 through 1971. The Indiana Department of State Revenue (Department) appeals from this determination. We affirm.

FACTS

In the taxable years in controversy, Kroger was engaged in the retail grocery business in the State of Indiana. During this time Kroger gave Top Value Trading Stamps to its customers whenever they made purchases valuing ten cents or more.

Under an agreement between Kroger and Top Value Enterprises, Inc., Kroger ac-

quired the stamps from Top Value for a fee, distributed them to its customers, who in turn could redeem the stamps for merchandise at one of several Top Value redemption centers located in Indiana. Alternatively, pursuant to state law,[1] the stamps had a cash redemption value which entitled customers to receive cash from Kroger or Top Value instead of merchandise.[2]

In preparing its Indiana Gross Income tax returns for the years in controversy, Kroger excluded from its gross receipts an amount equal to the fee it paid Top Value. Kroger claimed this amount represented a "cash discount" given its customers which under Indiana Code section 6–2–1–1(m) was excludable from its gross receipts for purposes of computing its gross income tax liability.

The Department disallowed the deduction and assessed Kroger for the additional tax liability. Following administrative proceedings in which the assessment was sustained and paid by Kroger, it initiated its action for recovery.

## ISSUE

For purposes of clarity, we have rephrased and restated the issues raised by the Department as one.

Did the trial court err in finding the trading stamps given by Kroger to its customers constituted cash discounts?

## DISCUSSION AND DECISION

The trial court properly concluded the trading stamps given by Kroger to its customers constituted cash discounts. Consequently, the amount of the fee paid by Kroger to Top Value Enterprises may be excluded from its gross income for the taxable years in controversy.

The provisions found in Indiana Code §§ 6–2–1–1 through 36 essentially define and implement a gross income tax upon entities doing business in this state. The term "gross income" is defined in part as:

"The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, including but not in limitation thereof, wages, bonuses, salaries, fees, commissions, gratuities (including the value of living expenses or rental of quarters furnished to the taxpayer) and the gross receipts of the taxpayer received from trades, businesses, or commerce, including admission fees or charges, and the gross receipts received from the sale, transfer, or exchange of property, tangible or intangible, real or personal, including the sale of capital assets, or from the assignment or sale of rights, all receipts received from the performance of contracts, all receipts received as prizes and premiums, all receipts received from insurance, all amounts received as alimony, damages, or judgments, and all receipts received by reason of the investment of capital, including but not in limitation thereof, interest, discounts, rentals, royalties, dividends, fees, commissions, and receipts received from the surrender, sale, transfer, exchange, redemption of, or distribution upon, stock of corporations or associations, and all other receipts of any kind or character received from any source whatsoever ..."

Indiana Code § 6–2–1–1(m). However, gross income does not include, and hence a taxpayer may exclude therefrom in computing the tax due, the amount of any "cash discount allowed and taken on sales ..." *Id.* It is this exclusionary language which gives rise to the present controversy.

In describing the nature and scope of the gross income tax our supreme court has stated:

"It is a tax upon total receipts without deductions of any sort.... The purpose of the Gross Income Tax was to levy a tax upon the receipts of all sums coming into the hands of the taxpayer, without regard as to whether or not he may have

---

1. Indiana Code section 24–4–2–3.

2. The cash redemption value was equivalent to 1.67 cents per ten stamps. Thus, 100 stamps had a cash redemption value of 16.7 cents.

suffered an actual loss in the transaction."

*The Department of Treasury of Indiana v. Crowder,* (1938) 214 Ind. 252, 256, 15 N.E.2d 89, 91–92. However, "to constitute gross income a transaction must come clearly within the statutory provisions, providing for such income. *In case of doubt the statutes will be construed against the state and in favor of the taxpayer." Walgreen Co. v. Gross Income Tax Division,* (1947) 225 Ind. 418, 420, 75 N.E.2d 784, 785 (emphasis supplied); *see also Indiana State Board of Tax Commissioners v. Ropp,* (1983) Ind.App., 446 N.E.2d 20, 24; *Indiana Department of State Revenue v. Food Marketing Corp.,* (1980) Ind.App., 403 N.E.2d 1093, 1096, *trans. denied; Indiana Department of State Revenue, Gross Income Tax Division v. Colpaert Realty Corp.,* (1952) 231 Ind. 463, 468–69, 109 N.E.2d 415, 418; *Department of Treasury of Indiana v. Muessel,* (1941) 218 Ind. 250, 254–55, 32 N.E.2d 596, 597. Moreover, because the trial court rendered special findings pursuant to Indiana Rules of Procedure, Trial Rule 52(A), we may not disturb its judgment unless it is clearly erroneous. Trial Rule 52(A); *Boffo v. Boone County Board of Zoning Appeals,* (1981) Ind.App., 421 N.E.2d 1119, 1131, *trans. denied; Bird v. Delaware Muncie Metropolitan Plan Commission,* (1981) Ind. App., 416 N.E.2d 482, 486; *Central Indiana Carpenters Welfare Fund v. Ellis,* (1980) Ind.App., 412 N.E.2d 865, 868.

Despite our limited standard of review and the rule of statutory construction favoring Kroger, the Department contends the trading stamps cannot be viewed as cash discounts, but rather, must be seen as a cost of doing business. Specifically, the Department urges us to find that the distribution of the stamps was merely an advertising ploy which in no way resulted in a cash discount to Kroger customers. Thus, the Department argues, Kroger should not be permitted to exclude the amount it paid for the stamps from its gross income.

While we have reached a contrary conclusion, we must concede the issue is complex and that both parties have made compelling arguments. Indeed, as the Illinois Supreme Court has noted: "Human ingenuity, understandably enough, functions at its optimum whenever tax problems are concerned." *Leslie Car Wash Corp. v. Department of Revenue,* (1978) 69 Ill.2d 488, 14 Ill.Dec. 457, 372 N.E.2d 653, 655. Nevertheless, we believe the weight of authority and an analysis of the nature of the trading stamps supports Kroger's position.

We have never addressed the precise issue now before us. The Indiana case most closely analogous is *Indiana Department of State Revenue v. Marsh Supermarkets, Inc.,* (1980) Ind.App., 412 N.E.2d 261. The taxpayer in that case, like Kroger, was engaged in the retail grocery business. In the course of its business it distributed coupons to its customers which entitled them to discounts on certain designated items. Additionally, the taxpayer itself received discounts from its suppliers when it sold a minimum quantity of certain promotional products. These latter discounts took the form of a rebate on the price paid by the taxpayer for the suppliers' products. In both instances, the taxpayer claimed the amount of the discounts should not be subject to taxation generally, and more specifically, the sales and gross income taxes respectively.

Ruling for the taxpayer on both counts, we held that both the discounts extended to customers and those received by the taxpayer were in the nature of cash discounts. With regard to the coupons, we found that their effect was to lower the price paid by customers. Hence, inasmuch as the sales tax was intended to apply only to the amount actually paid, no tax could be imposed upon the amount of the discount. Likewise, we held that the supplier discounts should also be exempt from taxation since they served to lower the price paid by the taxpayer and in no way contributed to its gross income.

*Marsh,* while similar to the instant case insofar as both involve the use of cash discounts, and implicate the gross income tax and exclusion for cash discounts, is distinguishable in several respects. First, no

direct analogy can be drawn from *Marsh* either with respect to the discounts given customers or those received by the taxpayer. In the first instance, while the nature of the discount given customers in *Marsh* was similar to that given Kroger customers, the issue we addressed in *Marsh* was whether that increment was subject to the sales tax, and not whether it should be included in the taxpayer's gross income; the subject of our present inquiry. With regard to the supplier discounts, both *Marsh* and the instant case concern an application of the gross income tax, but herein we are not concerned with discounts *received* by the taxpayer from its suppliers, but rather, discounts *given* by the taxpayer to its customers.

. More importantly, however, the discounts given in *Marsh* were clearly in the nature of "cash" discounts. Provided the taxpayer sold the minimum quantity of products, it received a rebate which effectively reduced the price paid by the taxpayer for the products. Similarly, customers in *Marsh* received direct price reductions upon presentation of the coupons.

In the instant case, the price reduction inuring to Kroger customers because of their receipt of trading stamps is not as clearly evident. However, our reading of cases from other jurisdictions addressing this issue leads us to conclude the stamps nonetheless constituted a cash discount to Kroger customers.

The Department, in support of its position, directs us to *State Tax Commission of Arizona v. Ryan-Evans Drug Stores,* (1960) 89 Ariz. 18, 357 P.2d 607, and *Benner Tea Co. v. Iowa State Tax Commission,* (1961) 252 Iowa 843, 109 N.W.2d 39. In both cases the respective courts held that the issuance of trading stamps by a retail merchant did not constitute cash discounts, and thus could not be deducted from the merchants' total receipts for tax purposes. Instead, the courts concluded, the cost incurred by the merchants in obtaining the stamps merely represented an advertising or pro-

motional expense which in no way reduced the price paid by their customers.

These cases are distinguishable, however. As Kroger has noted in its brief, Indiana law [3] requires that any trading stamp issued by a merchant must be redeemable for cash. No such provision was present in either *Ryan-Evans* or *Benner Tea Co.* This seemingly minor distinction is crucial in the instant case, however, because Kroger customers, by virtue of the statute, were entitled to a cash redemption for their stamps; in essence, a "cash" discount on the price they paid for goods at Kroger. Consequently, it must be concluded that the issuance of the stamps was indeed a cash discount.

Even assuming, *arguendo,* that the cash redemption statute did not exist, we still believe the stamps represented a cash discount. *Eisenberg's White House, Inc. v. State Board of Equalization,* (1945) 72 Cal. App.2d 8, 164 P.2d 57. In that case the taxpayer, a retail merchant, issued "S & H Green Stamps" to its customers and sought to deduct their value from its gross receipts for purposes of paying its sales taxes. Noting the stamps were only redeemable for merchandise *and not for cash,* the California court nevertheless concluded the stamps constituted cash discounts to the taxpayer's customers because they served to reduce the price paid for goods.

Finally, in reaching our conclusion we are persuaded by the reasoning found in *Colgate-Palmolive Co. v. Elm Farm Foods Co.,* (1958) 337 Mass. 221, 148 N.E.2d 861. Therein, a manufacturer charged various retailers of its products with violating the fair trade laws of Massachusetts by lowering the price of fair trade goods through the issuance of trading stamps. While the stamps were only redeemable for merchandise *and not for cash,* the manufacturer contended they nevertheless lowered the price paid for their products. In response, the retailers argued, unlike Kroger, that the issuance of the stamps was merely a promotional scheme which in no way lowered the price paid for the manufacturer's products.

---

**3.** Indiana Code section 24-4-2-2.

Finding the stamps, in effect, lowered the price paid, the Massachusetts court reasoned that:

"[W]ith the issuance of stamps or tapes a direct and tangible benefit is received by the customer which is specifically and inseparably related to the article purchased and its price.... There is no magic in the words 'cash discount.' When subjected to analysis they are merely a euphemism for what is in reality a price cut."

*Id.* 337 Mass. 226–27, 148 N.E.2d 864–65.

Likewise, in the present case when one analyzes the economic effect of the trading stamps, the inescapable conclusion is that Kroger customers were given what amounted to cash discounts when presented with the stamps. Not only were the stamps redeemable in cash, they were also redeemable for merchandise which presumably had a "cash" value as well. Thus, when Kroger customers purchased items and received trading stamps, they were effectively given something of value in return: the trading stamps. These, in turn, were redeemable for cash, either directly by virtue of the statute, or indirectly by virtue of the stampholder's claim to merchandise.

To say the trading stamps merely represented an advertising scheme is to miss the point. Of course the stamps had an advertising impact, but this was only collateral to their impact in reducing both the ultimate price paid by their recipients and the net proceeds received by Kroger. Consequently, we cannot but view the stamps as a "cash discount," and conclude Kroger may exclude their value from its gross income.

The judgment of the trial court is, therefore, affirmed.

ROBERTSON, P.J., and NEAL, J., concur.

